FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 07 2015 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KEVIN W. PHILLIPS,

**OPINION AND ORDER**

Petitioner,

14-cv-5820 (NG)

- against -

UNITED STATES OF AMERICA,

Respondent.

------------------------------------------------------------x
GERSHON, United States District Judge:

*Pro se* petitioner Kevin Phillips, a Guyanese citizen currently in the custody of United States Immigration and Customs Enforcement ("ICE"), requests a writ of *coram nobis* vacating a 2009 drug trafficking conviction that subjects him to mandatory deportation. Contending that his trial counsel provided constitutionally ineffective assistance regarding the immigration consequences of a conviction, petitioner seeks an opportunity to plead to a lesser offense that would preserve his ability to seek discretionary relief from removal.

## BACKGROUND

Petitioner was arrested in August 2005 for selling 26.1 grams of crack cocaine to two cooperating witnesses. He subsequently was tried before a jury in this court and, on December 11, 2009, he was found guilty on one count of distributing and possessing with intent to distribute five grams or more of crack cocaine. *See* 21 U.S.C. § 841(a)(1). Petitioner received a sentence of five years' imprisonment, the then-prevailing mandatory minimum,[1] and four years' supervised release.

---

[1] Three months before petitioner's sentencing, Congress passed the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, which increased from five grams to 28

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 07 2015 ★
BROOKLYN OFFICE

Because trafficking in any amount of crack cocaine constitutes an "aggravated felony" within the meaning of the Immigration and Nationality Act ("INA"), 66 Stat. 163, 8 U.S.C. § 1101 et seq., petitioner's conviction rendered him not only deportable but subject to mandatory deportation.[2] Petitioner's conviction was affirmed on appeal, see United States v. Hemmings, 482 Fed. App'x 640 (2d Cir. 2012), and, on October 1, 2012, the Supreme Court denied his petition for a writ of certiorari. See Phillips v. United States, 133 S. Ct. 256 (2012). On March 6, 2014, after serving his term of imprisonment, petitioner was detained by ICE. Petitioner asserts that he remains in ICE custody, where he is appealing an order of removal.

During the pendency of immigration proceedings, petitioner filed in this court the instant petition for a writ of coram nobis. Liberally construed, the petition asserts that petitioner proceeded to trial in 2009 only because his counsel at the time, Barry Krinsky, Esq., led him to

---

grams the quantity of crack cocaine needed to trigger a five-year mandatory minimum sentence. Under prevailing law, petitioner was not entitled to a sentence under the FSA. See United States v. Acoff, 634 F.3d 200, 202 (2d Cir. 2011) (defendants whose crimes predate FSA not entitled to FSA amendments). Subsequently in Dorsey v. United States, 132 S. Ct. 2321 (2012), the Supreme Court held that the FSA applies retroactively to defendants sentenced after the FSA's enactment (even if their crimes predate the FSA). Petitioner, who already has completed his term of imprisonment, never requested resentencing under the FSA.

[2]   This result is dictated by a network of interconnected statutes. See Moncrieffe v. Holder, 133 S. Ct. 1678, 1682 (2012) (summarizing statutory scheme). In brief, noncitizens convicted of "deportable" offenses may apply to the Attorney General for certain types of discretionary relief from removal—for example, asylum and cancellation of removal based on an extended lawful presence in the United States. See 8 U.S.C. §§ 1158, 1229b. Such relief is not available to noncitizens who have been convicted of an "aggravated felony." Id. §§ 1158(b)(2)(A)(ii), (B)(i); §§ 1229b(a)(3), (b)(1)(C). The class of aggravated felonies encompasses, inter alia, any "drug trafficking crime (as defined in section 924(c) of title 18)." 8 U.S.C. § 1101(a)(43)(B). A "drug trafficking crime," in turn, is defined to include "any felony punishable under the Controlled Substance Act," 18 U.S.C. § 924(c)(2); and any crime for which the maximum term of imprisonment is "more than one year" constitutes a felony. See § 3559 (a)(1)-(5). In sum, any offense under the Controlled Substances Act punishable by more than a year constitutes an "aggravated felony" triggering automatic removal. Under the Controlled Substances Act—both before and after enactment of the FSA—distribution of crack cocaine, in any quantity, is punishable by more than a year and thus an aggravated felony for immigration purposes. See § 21 U.S.C. § 841(b)(1)(C).

believe that a guilty verdict would not adversely affect his immigration status. Petitioner claims that, far from advising him that a conviction would result in mandatory deportation, Mr. Krinsky told him that, if he were found guilty, "he would not have any immigration consequences" so long as he simply "completed his probation." Petition at 11. Had he known that a conviction would assure his deportation, petitioner claims, he would have sought to plead to a lesser offense for which deportation would not be mandatory. Petitioner contends that his trial counsel made no attempt to negotiate such a plea agreement and that he was prejudiced as a result.

The government offers a different account of pretrial events, relying largely on affidavits from Mr. Krinsky and Sylvia Shweder, the Assistant United States Attorney who handled petitioner's trial. Mr. Krinsky affirms that, contrary to petitioner's allegations, he informed petitioner that "if he was convicted after trial he would receive a mandatory prison sentence and be subject to mandatory deportation." Affidavit of Barry Krinsky, dated March 2, 2015 ("Krinsky Aff.") ¶ 9. Mr. Krinsky also states that petitioner rejected plea bargaining out of hand, asserting on numerous occasions that "he was not taking any plea to anything because he was not guilty of these charges." *Id.* ¶ 6. Mr. Krinsky claims that he nevertheless asked the government whether any plea offer was available to petitioner and was told that any agreement would necessarily include "a plea to a federal felony narcotic conviction, which would carry with it a prison sentence and which would include subjecting Mr. Phillips to deportation." *Id.* ¶ 8.

Consistent with Mr. Krinsky's account, AUSA Shweder represents that (1) she never offered petitioner a plea agreement and (2) prosecutors who handled petitioner's case pretrial did not offer any "plea agreement that did not include deportation nor was any such plea agreement available." Affidavit of Sylvia Shweder, dated December 22, 2014 ("Shweder Aff.") ¶¶ 4–5.

3

## DISCUSSION

### A. Legal Standards

The government does not dispute that *coram nobis* provides an appropriate vehicle for petitioner to challenge the immigration repercussions of his conviction. Relief by writ of *coram nobis* is available only in "those cases in which errors of the most fundamental character have rendered the proceeding itself irregular or invalid." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) (internal quotation marks omitted). To obtain the writ, a petitioner must show that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Id.* (internal quotation marks omitted). As "a remedy of last resort," a writ of *coram nobis* should not serve as "a substitute for appeal." *Id.* (internal quotation marks omitted).

Constitutionally "ineffective assistance of counsel is one ground for granting a writ of *coram nobis*." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014). To establish ineffective assistance, a petitioner must satisfy the familiar *Strickland* standard, showing that "1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).

As to *Strickland's* first prong, the Sixth Amendment right to effective counsel attaches at the initiation of formal charges and encompasses an obligation to provide professionally competent advice regarding the immigration consequences of a conviction. *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). At a minimum, an attorney performs deficiently if he provides "affirmative misadvice" as to his client's deportability. *See Kovacs*, 744 F.3d at 51 (citing *United States v. Couto*, 311 F.3d 179 (2d Cir. 2002)). But that is not to suggest that a

defense attorney can satisfy his Sixth Amendment obligations by standing mute on the risks of deportation "when answers are readily available." *See Padilla*, 559 U.S. at 370. The specificity at which immigration advice must be volunteered ultimately turns on the complexity of the issues confronted. *See id.* at 369. Where the deportation ramifications of a particular offense are "not succinct and straightforward," defense attorneys "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Where, however, "the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.*

To establish prejudice under *Strickland's* second prong, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A petitioner claiming that his counsel's incompetent performance caused him to stand trial, rather than plead guilty, can show prejudice by demonstrating a reasonable probability that a "more favorable plea" offer could have been secured, and that he would have taken it. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385, 1386 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). Where, as here, counsel's alleged errors relate to immigration issues, the petitioner also must "clearly demonstrate that he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty." *Kovacs*, 744 F.3d at 52 (internal quotation and bracket marks omitted). In applying these standards, courts "must keep in mind that 'a defendant has no right to be offered a plea, nor a federal right that the judge accept it.'" *Id.* at 51 (quoting *Frye*, 132 S. Ct. at 1410).

Before turning to the merits of petitioner's claim, a note on the retroactivity of the foregoing principles is in order. Under *Teague v. Lane*, 489 U.S. 288 (1989), "new rules" of constitutional criminal procedure generally "will not be applicable to those cases which have

5

become final before the new rules are announced." *Id.* at 310 (plurality opinion); *see also United States v. Becker*, 502 F.3d 122, 128–29 (2d Cir. 2007); *Mandanici*, 205 F.3d at 527 ("*Teague* applies to *coram nobis* petitions."). Invoking *Teague*, the government contends that *Padilla* is inapplicable here because it was decided three months after petitioner's conviction at trial.

The government is correct that, in recognizing a Sixth Amendment obligation to supply some amount of immigration advice to noncitizen defendants, *Padilla* announced a new rule without retroactive effect. *See Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013). But the government ignores that "a conviction becomes final for purposes of *Teague* when the availability of direct appeal has been exhausted." *Becker*, 502 F.3d at 129 (internal quotation marks omitted). Petitioner's direct appeal was not exhausted until the Supreme Court denied his petition for a writ of *certiorari* on October 1, 2012, more than two years after *Padilla* was decided. The nonretroactivity of *Padilla* is "therefore beside the point." *Id.*[3]

More fundamentally, and as the government seems to concede, the petition here ultimately does not rest on any innovation traceable to *Padilla*. Petitioner's claim is not simply that he received insufficient immigration advice but, rather, that counsel *affirmatively misled* him by advising that a conviction at trial would be without immigration consequences. Since no later than 2002, the Second Circuit has recognized that such "affirmative misrepresentations" regarding the possibility of deportation (in contrast to omissions) can "constitute ineffective assistance." *Couto*, 311 F.3d 187; *see also Kovacs*, 744 F.3d at 50 (applying *Couto* to conviction

---

[3] The Supreme Court's decisions in *Lafler* and *Frye*, on which petitioner also relies, similarly predate the finality of petitioner's conviction. In any case, "[n]either *Lafler* nor *Frye* announced a new rule of constitutional law: Both are applications of *Strickland*." *Gallagher v. United States*, 711 F.3d 315, 315–16 (2d Cir. 2013) (internal quotation marks omitted).

that became final prior to *Padilla*). Because he does not rely on any new rule, petitioner's ineffective assistance claim is not barred by the nonretroactivity principle.

B. **Petitioner Has Not Established Ineffective Assistance of Counsel**

There is no question that petitioner's defense counsel performed unreasonably if, as petitioner alleges, he erroneously advised petitioner that a conviction on crack cocaine trafficking charges would be without immigration consequences. *See Kovacs*, 744 F.3d at 50 (erroneous advice that misprision of felony was not a deportable offense fell outside "range of professional competence"); *Couto*, 311 F.3d 187 (constitutionally deficient to advise that "there were things that could be done to avoid deportation (when in fact there were none)"). The government does not contend otherwise.

Petitioner's allegations of attorney error, however, cannot be accepted uncritically. *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible."). Although defense attorneys cannot be expected to master every wrinkle of the immigration code, it is no secret that noncitizens convicted of drug trafficking offenses are deportable, often without recourse. It is difficult to imagine an experienced New York criminal defense attorney being entirely ignorant of that basic precept. Moreover, had Mr. Krinsky misled petitioner to believe that he confronted little (or no) risk of deportation, one would expect petitioner to have taken issue with the misadvice at sentencing, when he was notified in open court of his deportability (*see* Gov't Opp. to Pet., Ex. A at 13), or on appeal. Petitioner did not do so.[4] In the circumstances, the court finds far more

---

[4] Notably, while petitioner was not obligated to assert his ineffective assistance claim on direct appeal, *see Massaro v. United States*, 538 U.S. 500, 505–06 (2003), his appeal papers construed his deportation as an inevitable consequence of the conviction, not as a separate injustice that might be the subject of collateral attack.

credible Mr. Krinsky's representation that petitioner was advised, and fully understood, that a conviction would inevitably lead to his removal from the country. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (trial court did not err in crediting counsel's affidavit over petitioner's "self-serving and improbable assertions").

Petitioner also contends that Mr. Krinsky was ineffective for failing to negotiate a plea with less severe immigration consequences. This claim, too, is without merit. Mr. Krinsky's credible affidavit establishes that petitioner expressed no interest in plea bargaining and stated that he would not accept any offer the government might extend. This was petitioner's prerogative, for the "choice of whether to plead guilty or insist on a trial belongs solely to the defendant." *Gonzalez v. United States*, 722 F.3d 118, 132 (2d Cir. 2013). But having refused to engage in plea discussions, petitioner cannot now claim that his counsel was ineffective for failing to negotiate a plea. *See Diallo v. United States*, 2014 WL 4460364, at *5 (S.D.N.Y. Sept. 10, 2014) ("Where a defendant refuses to plead guilty, counsel cannot be expected to pursue plea negotiations with the government.").

Equally fatal is petitioner's failure to demonstrate any prejudice resulting from his counsel's allegedly deficient performance. The only prejudice asserted by petitioner is his exposure to mandatory deportation. Accordingly, to prevail he must show a reasonable probability that, but for his counsel's asserted errors, he could have pleaded to an offense for which deportation would not have been mandatory. *See Strickland*, 466 U.S. at 694 (to show prejudice, there must be a "reasonable probability that . . . the result of the proceeding would have been different").[5] Petitioner has not made that showing.

---

[5] The government erroneously asserts that petitioner is precluded from establishing prejudice because he was ultimately convicted at trial. The Supreme Court rejected this very argument in *Frye,* a case the government cites, and again in *Lafler*, a case petitioner cites and the

8

To the contrary, AUSA Shweder has affirmed that no offer was made or available to petitioner that would not have entailed mandatory deportation, and Mr. Krinsky has confirmed that he was so advised prior to trial. There is no reason to doubt these affiants given petitioner's offense conduct. Petitioner was charged with, *inter alia*, distributing 26.1 grams of crack cocaine. Because this offense carried a 40-year maximum sentence, it was most certainly an "aggravated felony" assuring petitioner's deportation. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2009), *amended by* FSA, Pub. L. No. 111-220, 124 Stat. 2372; *supra* note 2 (summarizing statutory scheme). Indeed, trafficking in *any* amount of crack cocaine—both before and after the FSA's passage—constitutes a felony offense for which deportation is mandatory. *See* 21 U.S.C. § 841(b)(1)(C); *supra* note 2.[6] And, at the time of petitioner's conviction, the same was true for simple possession of crack cocaine, at least in the amount charged in the indictment. *See* 21 U.S.C. § 844(a) (2009) (prescribing maximum sentence of 20 years for possession of five grams or more of crack cocaine), *amended by* FSA, Pub. L. No. 111-220, 124 Stat. 2372.

Nothing in the record suggests that the government was inclined to offer a plea agreement for a misdemeanor offense that would have protected petitioner from mandatory removal. Petitioner relies instead on the speculative hope that somehow, someway, improbable results could have been achieved but for his counsel's alleged deficiencies. Speculation, however, does

---

government ignores. As the Court acknowledged in these decisions, "[b]ecause ours is for the most part a system of pleas, not a system of trials, it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Frye*, 132 S. Ct. at 1407 (citation and internal quotation marks omitted); *accord Lafler*, 132 S. Ct. at 1386. Thus, where counsel's ineffective assistance results in a defendant foregoing a more favorable plea agreement, the ensuing trial does not cure counsel's error; it "cause[s] the injury from the error." *Lafler*, 132 S. Ct. at 1386.

[6] Accordingly, even if petitioner were resentenced under the FSA—something he has not requested—he would face mandatory deportation.

9

not entitle petitioner to relief under *Strickland*, much less by way of extraordinary writ. *See United States v. Thornhill*, 34 F. Supp. 3d 334, 360–61 (S.D.N.Y. 2014).

In addition, petitioner has failed to "clearly demonstrate," as he must to establish prejudice in these circumstances, that he placed "particular emphasis on immigration consequences in deciding whether or not to plead guilty." *Kovacs*, 744 F.3d at 52 (internal quotation and bracket marks omitted). To be sure, petitioner now asserts that his primary defense objective was to remain in the United States, irrespective of the custodial sentence he received. But he never contends that this supposedly overriding concern was communicated to his counsel, to the court at sentencing, or in any other manner that might be susceptible to corroboration. With nothing to substantiate petitioner's assertions, the court finds more credible Mr. Krinsky's representation that petitioner's pretrial focus was not on preserving his immigration status but rather on proving his innocence.

### C. Petitioner Is Not Entitled To An Evidentiary Hearing

Petitioner contends that, at a minimum, he should be granted an evidentiary hearing and the opportunity to cross-examine Mr. Krinsky. Given the "similarities between *coram nobis* proceedings and [28 U.S.C.] § 2255 proceedings," § 2255 standards governing the use of evidentiary hearings are often applied "by analogy in *coram nobis* cases." *Foster v. United States*, 581 Fed. App'x 105, 106, n.1 (2d Cir. 2014). There is no basis to hold an evidentiary hearing here. Petitioner cannot establish ineffective assistance of counsel under Mr. Krinsky's description of pretrial events and, as already discussed, Mr. Krinsky's account is eminently credible. *See Chang*, 250 F.3d at 86 (where petitioner and his counsel offer conflicting accounts, court may credit detailed affidavit from counsel without holding an evidentiary hearing). And,

even under petitioner's version of events, he cannot establish prejudice. Accordingly, an evidentiary hearing would serve no substantive purpose.

## CONCLUSION

For the foregoing reasons, petitioner is not entitled to a writ of *coram nobis*. The petition is denied in its entirety.

SO ORDERED.

s/Nina Gershon

NINA GERSHON
United States District Judge

Dated: Brooklyn, New York
July 7, 2015